UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 26-20306 |
| v. | Hon. Judith E. Levy |
| D-3 Paige Elizabeth Feyock,<br>Defendant. | |

# United States' Response and Brief in Opposition to D-3 Paige Feyock's Motion to Modify Conditions of Release (ECF No. 148, PageID.763)

For the reasons stated in the attached brief, the Court should deny the defendant's motion.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

s/ Margaret M. Smith
Margaret M. Smith
Robert Kuhn
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
margaret.smith@usdoj.gov

Dated: September 8, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

D-3 Paige Elizabeth Feyock,
Defendant.

Case No. 26-20306

Hon. Judith E. Levy

---

**United States' Brief in Opposition to D-3 Paige Feyock's Motion to Modify Conditions of Release**
**(ECF No. 148, PageID.763)**

---

The magistrate court found Paige Feyock's behavior so concerning that he ordered her on house arrest. She now seeks to remove this condition, arguing that her compliance so far should merit the decrease in conditions. Feyock misstates the standard to reopen her hearing.[1] She presents no new information to justify reopening the hearing. And her individualized facts warrant continued home detention. This Court should deny her motion.

[1] The United States acknowledges this Court's prior decision regarding the standard for reopening a bond/detention hearing but makes this argument to preserve the record.

## Facts and Procedural History

Feyock actively participated in several long-running conspiracies to threaten administrators, elected officials, and business owners who—at least in the defendants' minds—had financial ties to the State of Israel. Some of her conduct is outlined in the indictment (ECF No. 1), and the government's motion for detention (ECF No. 42), incorporated here in this briefing. Of note, Feyock helped to plan and carry out attacks on family homes and the Jewish Federation of Metropolitan Detroit on the one-year anniversary of the October 7 attacks by Hamas. She and other defendants conspired to commit these crimes while no one was looking, in the cover of night, with hoods and masks. The clandestine and intentional nature of the acts, combined with their added threats on social media, made the attacks all the more threatening and dangerous to this community. It also made the attacks difficult to investigate and determine identity.

Feyock was arrested on June 10, 2026. After a lengthy detention hearing, the magistrate court released her on bond with conditions that included house arrest. (ECF No. 78). Feyock now seeks to be allowed additional conveniences, though she provides no new, material

information to reopen her bond hearing to modify her conditions. Based on these facts and the law, the Court should deny his motion.

## Argument

Title 18 U.S.C. 3142(f) controls this Court's review of Feyock's motion to modify her bond conditions. A bond hearing may be reopened only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonable assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Feyock asks that the Court modify her terms of pretrial release under 18 U.S.C. § 3142(c)(3). But § 3142(c)(3) does not allow for boundless judicial review. Section 3142(f)(2) is the gatekeeping requirement to modify conditions under § 3142(c)(3). As Judge Berg explained in *United States v. Brannon*, Case No. 25-20560, 2026 WL 661964 (E.D. Mich. March 9, 2026), "courts have *routinely held* that a motion to modify conditions of pretrial release amounts to a motion to reopen the detention hearing[.]" (emphasis added) (citing *United States v. Ebonka*, 733 F.Supp. 3d 967, 969 (D. Nev. 2024) (collecting cases)); *see*

*also United States v. Mays*, Case No. 23-20521, 2024 WL 2863246 (E.D. Mich. June 6, 2024) (Goldsmith, J.) ("To demonstrate that an amendment to his or her bond conditions is merited, the defendant must comply with 18 U.S.C. § 3142(f)(2)'s requirement."); *United States v. Buford*, Case No. 24-20250, 2024 WL 3262602 (E.D. Mich. July 1, 2024) (Parker, J.) (applying *Mays*). This is the widely adopted position of courts in this district, and for good reason. Otherwise, § 3142(f)(2) becomes meaningless, and a defendant "could file endless petitions to modify his conditions." *United States v. Ross*, Case No. 33-128, 2024 WL 1890087 (E.D. Tenn. April 30, 2024) (*citing United States v. Peguero*, Case No. 21-10, 2021 WL 4811315 (W.D. Ky. Oct. 14, 2021), (collecting cases)).

Of course, a defendant can seek to amend her bond conditions without new evidence, but there is completely separate and specifically designed procedure for that: a motion to appeal bond conditions under 18 U.S.C. § 3145(a). *See Fernandez v. United States*, 146 S. Ct. 1292, 1301 (2026) (explaining that statutes cannot be interpreted to allow parties to "circumvent" and "frustrate" explicit and established statutory processes (collecting caselaw)). Feyock did not file a motion under § 3145(a), and

therefore, she must comply with the established procedural rules for reopening a detention hearing under § 3142(f)(2).

Therefore, Feyock must show two things before this Court can amend her conditions under § 3142(c)(3): (1) new information that was not known to Feyock at the time of the hearing and; (2) that has a material bearing on the issue of flight and dangerousness. *See United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) (discussing requirements). She has done neither.

Feyock points to her successful compliance on bond, and her need for employment. But neither of those things should move this Court to amend her bond conditions. Her bond conditions allowed her to attend classes. The United States takes no issue with substituting employment for class.

As noted in the indictment and the government's detention brief (ECF No. 42), Feyock and her conspirators have a history of illegal and aggressive conduct. They attacked family homes, businesses, and a Jewish association on the one-year anniversary of the October 7 attack by Hamas. They also conspired to widely circulate their criminal activity on social media, spreading fear and intimidation among their victims and

the public at large. They committed these attacks at night with masks and hoods to avoid detection. The planned and covert nature of the attacks made them more difficult to investigate and determine the identity of those involved.

Feyock frequently acted as countersurveillance for the conspirators. She had access to a police scanner and used it frequently. She offered to research law enforcement tactics to assure others they would be undetected because the FBI were not smart enough. She also noted to a group that she was posting for SAFE on Twitter. And she, too, expressed a desire to engage in violent activity.

Feyock and Ahmet Korkaya had multiple discussions regarding such activity. More alarming is the fact that Korkaya was a medical student, studying to be a doctor. Feyock was a pre-med student who also served as a doula for laboring mothers.

The pair discussed firebombing the University of Michigan, driving a car into the University President's house, and maintaining a presence on campus to make the Regents "feel scared." The discussion regarding their desire to kill their enemies – particularly U of M administrators – is chilling:

Korkaya: I'm going to terrorize that Ozempic bitch

Feyock: I won't stop until she kills herself

Korkaya: No actually that's what my last night in ann arbor will be . . . . her death.

(May 21, 2024). Feyock suggested they go after Regents' "kids." Korkaya agreed that it was "the only way to clear my conscious [sic]." The pair continued to discuss taking a Regent hostage, "make her walk around campus naked . . .shouting shame" and then "shave her head." (May 21, 2014).

Feyock and Korkaya wanted to "build something" like Weather Underground, the domestic terrorist organization from the 1960s. Both agreed that if the "feds figure out how to get back all those disappeared signal messages," it's "over." Feyock thought the comment was funny.

Feyock also discussed "firebombing" the University of Michigan with UCC-1. She said she was going to firebomb a new building on campus to "make a point." She believed that there was "nothing redeemable" about the University of Michigan.

Feyock also supported burning a cross in the front yard of a "brown" professor. When asked if that was what the KKK did, Feyock responded,

"it sends a message.....they were onto something." Feyock further fantasized, "imagine how scary it would be to see a burning cross in your yard . . . ." (September 3, 2024).

Significantly, a grand jury has indicted Feyock for witness intimidation. She has already demonstrated that she will interfere with the law to get the results she seeks.

Feyock presents no basis for this Court to reopen her bond hearing. Her current conditions allow her to attend to her daily life. No new evidence has been presented to justify reopening her bond hearing or revoking this reasonable condition. To be fair, the record does demonstrate that Defendant has not violated her pretrial release conditions, but compliance is what allows Defendant to remain on pretrial release. Compliance with existing conditions of release is expected and, in fact, legally mandated. It does not show that "the conditions in place are not the least restrictive that can be fashioned to address flight risk." *United States v. Ebonka*, 733 F. Supp. 3d 967, 971 (D. Nev. 2024); *United States v. Ross*, Case No. 23-128, 2024 WL 1890087 (E.D. Tenn. Apr. 30, 2024) ("But compliance with conditions of release is *expected* and does not constitute new and material information

warranting amendment." (emphasis added) (citing *United States v. Kube*, Case No. 119-00257, 2020 WL 1984178, at *5 (E.D. Cal. Apr. 27, 2020)). If that were true, then a defendant could earn a relaxation of bond conditions simply by mere compliance. "There is not logic to that proposition, and no supporting authority" for it, either. *United States v. Mays*, No. 23-CR-20521, 2024 WL 2863246, at *7 (E.D. Mich. June 6, 2024). The fact that Feyock appears to have followed court-ordered restrictions during the limited time she has been on pretrial release demonstrates the *effectiveness* and *value* of the conditions, rather than justifying the *removal* of the rules that have so far worked. Feyock has not presented information that demonstrates "truly change circumstances, something unexpected, or a significant event" that justifies a change in bond conditions. *United States v. Meeks*, Case No. 10-20123, 2011 WL 4407448, at *4 (E.D. Mich. Sep. 22, 2011) (quoting *United States v. Jerdine*, Case No. 08-00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec.18, 2009)).

## Conclusion

The defendant's motion should be denied.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*s/ Margaret M. Smith*
Margaret M. Smith
Robert Kuhn
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
margaret.smith@usdoj.gov

Dated: September 8, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Sanford Plotkin,
Molly Armour,
Attorneys for Paige Feyock